# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist ROBERT G. BURMEISTER**
**United States Army, Appellant**

ARMY 20170065

Headquarters, 10th Regional Support Group
Christopher T. Fredrikson, Military Judge
Lieutenant Colonel Marvin J. McBurrows, Staff Judge Advocate

For Appellant: Major Brendan Cronin, JA; Captain Meghan E. Mahaney, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA (on brief).

26 April 2018

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curiam:

In this appeal we address appellant's claim that his sentence should be reduced because the post-trial processing of his case was fifteen days longer than the standard outlined in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). We determine no relief is required.

## BACKGROUND

At his guilty plea Specialist Robert G. Burmeister stipulated to the following facts:

Prior to joining the Army Specialist (SPC) Burmeister had a sexual relationship with a fourteen-year-old girl. He was 22 years old at the time. The relationship lasted three years.

In November 2015, appellant arrived at his new duty station in Japan. Soldiers greeted him at the airport. The very first question he asked them was "is child porn legal in Japan."

Two months later, in January 2015, SPC Burmeister initiated online contact with a fifteen-year-old girl. She told him she was uninterested in having a relationship with him because he was too old. The child was the daughter of a Marine Master Gunnery Sergeant. The father subsequently confiscated his daughter's phone. Specialist Burmeister, believing he was still texting with the child, continued to send messages. The messages included asking what "her" favorite sexual position was, whether she was into biting, and whether she wanted to spend the night with him.

The father contacted Navy law enforcement.

Soon after, SPC Burmeister began communicating with a person he believed was a fourteen-year-old girl named "Lizzy Hernandez." Appellant turned the conversation sexual. He asked "Lizzy" whether she swallowed a man's ejaculate after performing oral sex, whether she would consent to anal sex, and he attempted to confirm that he would be allowed to perform oral sex on her. Using vulgar vernacular, SPC Burmeister asked "Lizzy" about her sexual experiences, and asked her to send him pictures of her masturbating. "Lizzy" then reminded SPC Burmeister that she was only fourteen. Undeterred, appellant offered to pick "Lizzy" up and bring her to his barracks room for the night. The conversation with "Lizzy" ended when SPC Robert G. Burmester then went to her house, knocked on the door, and was immediately apprehended by agents from the Navy Criminal Investigative Service.

A search of SPC Burmeister's phone revealed a sexualized conversation with yet another underage girl. This time, the victim was the daughter of a member of the United States Air Force. Having met the girl in person, and having specific knowledge that she was sixteen, appellant asked her to send him nude pictures of herself. When she protested, stating, "You're 25, I'm 16" appellant explained that his ex-girlfriend was only slightly older than her. Specialist Burmeister's conversation with the child included discussions of picking her up from high school, her curfew, and the rules imposed on her by her parents.

Caught, appellant pleaded guilty to two specifications of attempted sexual abuse of a child, two specifications of attempted receipt of child pornography, and one specification of attempted sexual assault of a child.

The military judge, sitting as a general court-martial, sentenced appellant to a dishonorable discharge, confinement for thirteen months, total forfeiture of pay and allowances, and a reduction to the grade of E-1. The dishonorable discharge was a mandatory punishment.

## DISCUSSION

Appellant asks this court to reduce his sentence to confinement because of unreasonable post-trial delay.  Appellant correctly asserts that the 135 days taken to conduct the post-trial processing of his case is presumptively unreasonable and exceeds the 120 standard established by our superior court in *United States v. Moreno.*  63 M.J. at 142.  Accordingly, we are required to answer two questions.

First, is appellant entitled to relief because of the tardy post-trial processing of his case amounted to a due process violation?  *See Id.* at 135-36.  We answer this first question summarily in the negative.[1]

Second, in cases of post-trial delay not amounting to a due process violation, we must still determine whether under Article 66(c), UCMJ, the sentence "should be approved."  In answering this question we recognize that a sentence may be correct in law and fact but still be inappropriate. As our review is not omnidirectional, it essentially means that we reduce sentences that in our judgment are too high.  We determine appellant is not entitled to relief.

Appellant pleaded guilty to five separate specifications of improper sexual conduct with three different children, or persons appellant believed to be children.  Appellant further stipulated to a three-year sexual relationship with an underage girl prior to joining the military.  Appellant's first thought upon arriving at an OCONUS duty station was of the legality of child pornography in Japan.  Appellant's sexual misconduct, which was often directed at the minor daughters of fellow service members, goes to the heart of military discipline.  In a profession that often requires its members to spend extended time away from their family, it is hard to quantify the loss of trust that may occur if one fears that your fellow service members cannot be trusted not to molest your children in your absence.

Appellant faced a maximum sentence of seventy-years confinement.  Given the gravity of appellant's crimes, and the substantial evidence that society needs

---

[1] In its brief, the government, in applying the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), and arguing the delay in this case did not occasion a due process violation, notes the court-martial jurisdiction in this case "is relatively inexperienced in post-trial processing to more populated and busy jurisdictions around the world."  For our purposes, this assertion is irrelevant to our consideration.  First, government counsel did not move to attach matters to the record to support this proposition, which is wholly unsupported by anything in the record.  Second, as our superior court has noted, "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay."  *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011).

protection from appellant, an adjudged sentence of several decades was a plausible outcome of the court-martial. Appellant's sentence to confinement for thirteen months represents 1.5% of the maximum sentence. Given the leniency of the adjudged and approved sentence, we conclude that notwithstanding the presumptively unreasonable delay in the post-trial processing of appellant's case, appellant's sentence remains appropriate and should be approved.[2]

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[2] The case was docketed at this Court on 26 June 2017. When this case arrived at this Court appellant had completed approximately five months of his thirteen-month sentence. Appellant's brief was filed nine months later. While appellant asks this court to reduce his sentence to confinement based on the unreasonable post-trial delay, at this point, he has already been released. If reducing appellant's sentence to confinement (after it has already been served) has a possible pecuniary benefit to appellant (notwithstanding that part of the executed sentence includes total forfeitures of pay and allowances) it has not been made clear to us.